[Civ. No. 14996. First Dist., Div. Two. Feb. 27, 1952.]

Estate of CHRISTINA LYNN, Deceased. JOHN LAYOUS, Appellant, v. MONTEREY COUNTY TRUST AND SAVINGS BANK, Respondent.

John W. Hutton for Appellant.

Ernest V. Scettrini for Respondent.

GOODELL, J.—This appeal is from an order determining heirship.

Christina Lynn, a widow aged about 86 years, died testate on November 26, 1949. Her estate consisted of a ranch of 300.19 acres near King City, appraised at $18,500; $669.68 in cash; $300 unpaid rent due her; bank stock valued at $86.75 and household furniture and personal effects valued at $200, making a total estate of $19,756.43 as appraised.

Creditors' claims allowed, approved and paid aggregate $5,848.44, of which $4,638.69 was a debt owed to respondent secured by a deed of trust on the ranch, $279.10 expenses of the last illness, $881.45 funeral expenses, and $49.20 for wood sold and services rendered to the testatrix.

The will, dated April 11, 1941, directed the prompt payment of all just debts and funeral expenses.

The fourth paragraph thereof reads: "I hereby direct that my said Executor sell my said ranch property and that the proceeds therefrom be divided equally among the following named persons: John Layous, a friend, Alma C. Lorentzen, a niece, and Lillian Gianini, a niece."

The fifth paragraph bequeaths the residue of the estate to Alma C. Lorentzen.

The sixth paragraph reads: "I have purposely made no provision for any other person, whether claiming to be an heir of mine or not, and if any person, whether a beneficiary under this will or not mentioned herein, shall contest this will or object to any of the provisions hereof, I give such person so contesting or objecting the sum of one dollar, and no more, in lieu of the provision which I have made or which I might have made herein for such person so contesting or objecting."

The respondent Monterey County Trust and Savings Bank was named as executor, and was appointed and qualified as such.

The ranch was sold as directed and the selling price was $20,005.40, which brought the value of the estate up to about $21,261.83.

Appellant filed a petition to determine heirship alleging "that there is not sufficient property in said estate with which to pay the claims against said estate and the expenses of administration without abatement of the above-mentioned legacies." Therein he stated his position as follows: "That your petitioner is entitled to distribution of one-third of the proceeds from the sale of decedent's ranch property . . . remaining after payment of all claims against said estate and of the expenses of administration thereof."

Notice of the hearing was duly given by posting and mailing, and after the hearing the court filed an opinion holding, on the authority of *Estate of Buck,* 32 Cal.2d 372 [196 P.2d 796], that since the two nieces were kindred of the testatrix, and petitioner was not, his legacy should abate. The order (from which this appeal was taken) reads in part as follows: "that the legacy to petitioner, John Layous, a friend of, and not related to testatrix, abate wholly, or in part, until all claims, debts, and expenses of administration are paid and discharged, after the application of any residuary estate on hand; and that said legacy to said John Layous be first resorted to, and wholly abate and be fully exhausted, if necessary, before any resort is made, or any abatement is had, in whole or in part, of the legacies of either of the two . . . nieces, Alma C. Lorentzen and Lillian Gianini."

Section 752, Probate Code, on which the court relied, provides: "*Unless a different intention is expressed in the will,* abatement takes place in any class only as between legacies of that class, and legacies to a spouse or to kindred shall abate only after abatement of legacies to persons not related to the testator." (Italics added.) The court held that no different intention was expressed in the will. With this conclusion we disagree.

The testatrix must have had some reason for writing the one dollar provision into the will, and in our opinion paragraph sixth shows, among other things, that she was determined that the equality provision which she had written into paragraph fourth should not be disturbed under any circumstances. The very fact that appellant was a stranger in blood but was nevertheless placed on a parity with the nieces of the testatrix may have caused her to make assurance doubly sure by the reinforcement which paragraph sixth gave to para-

graph fourth. Abatement such as that ordered would completely tear down what the testatrix had seen fit to set up as appellant's one-third share in the proceeds.

It is true that the deficiency of assets made a reduction of the legacies inevitable, and appellant's petition recognized it, but the payment of the creditors' claims and the expenses of administration out of the proceeds of the sale of the ranch would still result in an equal division of what was left, and the intention of the testatrix would thus be carried out to the letter, not thwarted.

It is significant that the nieces elected not to appear in the heirship proceeding, and it is fair to assume that they absented themselves advisedly and with eyes open to the provisions of paragraph sixth. Appellant's petition was contested, but not by the nieces. The executor appeared and filed a formal, verified answer (although the statute does not require it) wherein the executor denied petitioner's allegation that he was "entitled to distribution of one-third of the proceeds from the sale . . . remaining after payment of all claims against said estate and of the expenses of administration . . ." and added thereto a special plea "That the legacy of said petitioner under said last will and testament has totally abated under the provisions of Sections 750, 751, and 752 of the Probate Code . . ." Such a denial or such a plea if made on behalf of the nieces would have placed their legacies in jeopardy under paragraph sixth—and presumably they knew it—for thereby they would have invoked (as the executor did) a technical rule of law (Prob. Code, § 752) which would have thwarted the intention expressed by their own testatrix in paragraph fourth.

In *Estate of Hite*, 155 Cal. 436, 444 [101 P. 443, 17 Ann. Cas. 993, 21 L.R.A.N.S. 953] the court said: "But wherever an opponent uses the appropriate machinery of the law to the thwarting of the testator's expressed wishes, whether he succeed or fail, his action is a contest." In speaking of provisions similar to those in paragraph sixth the court (pp. 440-441) said: "The reasons why such provisions are upheld as part of a sound public policy cannot be more aptly stated than in the language of the supreme court of the United States in *Smithsonian Institution* v. *Meech,* 169 U.S. 398, [18 S.Ct. 396, 42 L.Ed. 793], where the matter was discussed in the following language: 'The propositions thus laid down fully commend themselves to our approval; they are good law and good morals. Experience has shown that even after

the death of a testator, unexpected difficulties arise, technical rules of law are found to have been trespassed upon, contests are commenced, wherein, not infrequently, are brought to light, matters of private life that ought not to be made public, and in respect to which the voice of the testator cannot be heard, either in explanation or denial, and as a result the manifest purpose of the testator is thwarted. *It is not strange, in view of this, that testators have desired to secure compliance with their dispositions of property and have sought to incorporate provisions which should operate most powerfully to accomplish that result.* And when a testator declares in his will that his several bequests are made upon the condition that the legatees acquiesce in the provisions, the courts rightly hold that no legatee, without compliance with that condition, shall receive his bounty, or be put in a position to use it in the effort to thwart his expressed purposes.'" (Italics added.)

In the Hite case the language was: "If any of my heirs or devisees, or any one else, contests this, my last will and testament, it is my will and desire, and I declare that he, or she, or they, shall receive no part whatever of my estate, and if such an event happens, I hereby revoke any devise or bequest herein made to such contestant or contestants." In the instant case the testatrix did not stop with the words "if any . . . beneficiary . . . shall contest this will" but added *"or object to any of the provisions hereof"* (Italics added.) We are satisfied, as already indicated, that paragraph sixth was sufficient to show a clear intention (see Prob. Code, § 752) that there should be no abatement which would unbalance, upset, or destroy, the clear intent of paragraph fourth that appellant's share thereunder should be no less and no more than that of each of the blood relatives of the testatrix.

When the testatrix said "if any . . . beneficiary . . . shall . . . object to any of the provisions hereof" she thereby, in substance, demanded acquiescence by her beneficiaries in the provisions of the will as such provisions appeared on its face.

Section 1080 Probate Code provides that in an heirship proceeding "Any person may appear and file a written statement setting forth his interest in the estate. No other pleadings are necessary and the allegations of each claimant shall be deemed to be denied by each of the other claimants to the extent that they conflict with any claim of the latter." The nieces did not even venture to file such simplified plead-

ing. Had they done so and set forth their "interest in the estate" as "claimants" under paragraph fourth, without invoking, as the executor did, an abatement of appellant's legacy (which, of course, would increase their own shares) such action would probably have been interpreted as an acquiescence in appellant's position. We think such acquiescence is shown anyway by their failure to appear.

The failure of the nieces to appear, when contrasted with the executor's role as an active litigant presents a rather puzzling situation. ■ The only parties in interest in a proceeding such as this are the legatees and devisees, styled "claimants" by section 1080. The executor is not a "claimant" but is "a mere officer of the court, holding the estate as a stakeholder . . ." (*Estate of Healy,* 137 Cal. 474, 477 [70 P. 455]). ■ "It is generally recognized that executors and administrators acting in their representative capacities are indifferent persons as between the real parties in interest and consequently cannot litigate the conflicting claims of heirs or legatees at the expense of the estate" (*Estate of Kessler,* 32 Cal.2d 367, 369 [196 P.2d 559], citing numerous cases.) ■ The executor is the representative of *all* the legatees and devisees and its "duty was, and doubtless now is, to stand indifferent to all claimants, and not to favor one above the other, until the decision becomes final" (11B Cal.Jur., p. 672, citing *Roach* v. *Coffey,* 73 Cal. 281 [14 P. 840] and *Estate of Friedman,* 176 Cal. 226 [168 P. 21]).

■ It is true section 1080 requires notice to be given to an executor, but that apparently is only for the purpose of keeping him informed (11B Cal.Jur., p. 672). In *Estate of Friedman,* 176 Cal. 226, 228-229 [168 P. 21], the court said: "It is no part of the duty of the executor to participate actively in a proceeding under section 1664 [now Prob. Code, § 1080] to ascertain and determine the succession to the estate. . . . The executor or administrator . . . has no interest in the question to be determined. No answer is required to be filed by him. He has no claim which he can set up in opposition to those of the rival claimants for the estate, and his name is inserted as a party solely for the purpose of giving him information of the proceeding, so that he may be advised as to the judgment therein given, and of the pendency of the proceeding itself. As far as he is concerned, it is in the nature of a notice of *lis pendens.* It follows, therefore, that he has no authority as executor to engage attorneys for either claimant to the estate, or to bind

the estate in any manner to pay for services rendered in that behalf. These principles are thoroughly settled by many decisions. . . ."

Had the probate court ruled in favor of the present appellant instead of against him, and the present respondent had appealed, its appeal would have been dismissed because it would not have been an aggrieved party. There are numerous cases so holding, among them *Estate of Babb,* 200 Cal. 252, 255 [252 P. 1039].

▮ The answer of the executor did not, and could not, set up any "interest" of its own as a "claimant" (Prob. Code, § 1080) hence, in our opinion, it raised no issue in the proceeding.

It follows from the numerous authorities cited that the respondent in this case will not be entitled to any fee payable out of the estate or from its assets for services in the probate court or on this appeal arising out of or in connection with the heirship proceedings, or any expenses or costs in connection therewith, nor will its counsel be entitled to any fee payable out of the estate or from its assets, for services rendered to the respondent in connection with its answer filed in the heirship proceeding or in presenting or litigating that matter, or for representing the respondent on this appeal, or for any costs or expenses in connection therewith.

The order appealed from is reversed with the direction to enter an order to the effect that appellant is entitled to distribution of one third of the proceeds of the sale of the ranch property remaining after the payment of all claims against the estate and of the expenses of administration, and such other orders as are in accordance with this opinion. Appellant's costs are to be taxed against respondent, but not in its capacity as executor.

Nourse, P. J., and Patterson, J. pro tem., concurred.